

### NUMBER 13-09-00236-CV

### COURT OF APPEALS

### THIRTEENTH DISTRICT OF TEXAS

### CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **SUSAN WELLS,** | **Appellant,** |
| **v.** | |
| **BEST INSURANCE SERVICES, INC.,** | **Appellee.** |

### On appeal from the 23rd District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela**
**Memorandum Opinion by Justice Benavides**

This is an appeal from an order granting summary judgment in favor of appellee, Best Insurance Services, Inc. ("Best"), based on admissions by appellant, Susan Wells, which were deemed admitted under Texas Rule of Civil Procedure 198.2(c) because of Wells's failure to timely respond.

By two issues, Wells contends that the trial court erred in denying her Motion to Strike Deemed Admissions, in granting Best's Motion for Summary Judgment based on the

deemed admissions, and in denying her Motion for New Trial because: (1) Wells showed good cause for the tardiness of her response, and Best would not have been unduly prejudiced by allowing the admissions to be stricken; and (2) the deemed admissions called for legal conclusions, and therefore could not serve as the basis for the summary judgment in Best's favor. We reverse and remand.

## I. BACKGROUND

In 2007, Wells owned Nalley Insurance Agency. Wells entered into a purchase and sales agreement with Best, by which Best agreed to purchase certain assets of Nalley Insurance Agency for $275,000. Best agreed to pay $25,000 in two specified cash payments and executed a promissory note in favor of Wells for the remaining $250,000, which was to be paid in 24 monthly installments of $11,306.90. After making only one payment by the terms of the note, Best filed suit against Wells for fraudulent inducement and other causes of action based on alleged misrepresentations made by Wells. Within thirty days, Wells filed an answer generally denying all of Best's allegations and a counterclaim for the amounts due under the note.

In the interim, Wells filed a "Chapter 13" bankruptcy action and the suit was stayed. On September 5, 2008, the stay was lifted at Best's request, and Best thereafter served Wells—through her then attorney, Jessica Siegel—with Best's First Requests for Admissions on October 16, 2008. Answers to the requests were due on November 18, 2008. On October 17, 2008, Siegel contacted Larry Vick—Wells's bankruptcy attorney—asking him to take over representation of Wells in the suit, and Vick agreed.

The next day, on October 18, 2008, Vick's law office was destroyed by fire, causing him to move into a temporary, emergency office with several other displaced tenants with whom Vick was not associated. A temporary receptionist was hired to assist the various

2

businesses displaced by the fire. Vick was substituted as trial counsel on November 3, 2008, and on that same day, Siegel had Wells's file, including the requests for admissions, delivered to Vick's temporary office. Upon delivery, however, the receptionist mistakenly forwarded the file to a different law firm that was also displaced by the fire and that was sharing the temporary office.

The error was not discovered until December 10, 2008, at which time Vick first became aware that requests for admission had been served on Wells and were already late. Vick immediately contacted counsel for Best and requested an additional ten days in which to respond. Best denied the request, and on December 16, 2008, filed its motion for summary judgment based on the deemed admissions and an affidavit from Best's president, Russell Burnett. In its motion, Best sought summary judgment on its fraudulent inducement claim and its offset defense to Wells's counterclaim. On December 19, 2008, Vick filed a motion to strike the deemed admissions and responses to the past-due requests. In support of the motion, Vick filed an affidavit explaining the circumstances of the change in counsel, the fire, and the receptionist's mistake in delivering Wells's file. Best challenged the affidavit on grounds that it did not contain the statement that it was "true and correct" and it contained hearsay that was not within Vick's personal knowledge.

On February 9, 2009, the trial court denied Wells's motion to strike the deemed admissions, granted Best's motion for summary judgment, and entered a final judgment. Vick filed Wells's motion for new trial on March 11, 2009, and the trial court denied the motion on March 25, 2009.

The first trial setting in this case was originally set for February 17, 2009, sixty days after Wells filed her responses to the requests and her motion to strike the deemed admissions.

3

## II. DISCUSSION

### A. Standard of Review

We review a ruling on a motion to strike deemed admissions for an abuse of discretion. *See, e.g., Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam). "We recognize that trial courts have broad discretion to permit or deny withdrawal of deemed admissions, but they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles." *Id.* (citing *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam)); *see also* W. Wendell Hall, *Standards of Review in Texas*, 38 ST. MARY'S L.J. 47, 60-63 (2006) (citing dozens of cases using an identical standard of review).

### B. Applicable Law

"When a party fails to answer a request for admissions, the matters therein are deemed admitted without the necessity of a court order. Such admissions are 'conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission.'" *Stephenson v. Perata*, No. 2-08-375-CV, 2009 Tex. App. LEXIS 3172, at *3 (Tex. App.–Fort Worth May 7, 2009, no pet.) (mem. op.) (per curiam) (quoting TEX. R. CIV. P. 198.1-.3). A trial court has no discretion to deny that the requests be deemed admitted. *See* TEX. R. CIV. P. 198.2(c). The standard for determining if deemed admissions should be withdrawn is a showing of: (1) good cause; and (2) no undue prejudice. *See Wheeler*, 157 S.W.3d at 442. "A party demonstrates good cause by showing the failure to answer was an accident or mistake, not intentional or the result of conscious indifference." *Stephenson*, 2009 Tex. App. LEXIS 3172, at *6 n.14 (citing *Wheeler*, 157 S.W.3d at 442). "Undue prejudice depends on whether withdrawing an admission . . . will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443 (citing *Carpenter v. Cimarron*, 98 S.W.3d 682, 687-88

4

(Tex. 2002)).  Rule 198 also provides that "the presentation of the merits of the action [should] be subserved" when considering whether the admissions should be withdrawn.  TEX. R. CIV. P. 198.3(b).  If a party seeking to withdraw the deemed admissions can satisfy these requirements, a trial court acts unreasonably in refusing to withdraw admissions and abuses its discretion.  *See id.*; *Wheeler*, 157 S.W.3d at 442.

## C.    Competency of the Affidavits

First, we will consider the competency of Vick's affidavit as evidence that could be considered by the trial court.  Best argues at length that the trial court could not properly consider Vick's affidavit because it did not contain a jurat attesting to the truth of the matters contained therein, and because it included hearsay about which Vick could not have had personal knowledge.  We disagree.

"'Affidavit' means a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."  *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 645-46 (Tex. 1995) (citing TEX. GOV'T CODE ANN. § 312.011(1) (Vernon 1998)).  Despite the fact that Vick's affidavit contained only an acknowledgment, it was sufficient to meet Texas's statutory requirements for an affidavit.  *Id.*; *see also Rose v. Comerica Bank-Texas*, No. 14-3-00440-CV, 2004 Tex. App. LEXIS 9304, at *8-*9 (Tex. App.–Houston [14th Dist.] Oct. 21, 2004, pet. denied) (mem. op.) ("[A]n affidavit containing only an acknowledgment is nevertheless effective if it states that the signing party appeared before the officer, was first duly sworn, and on his oath, stated what follows.").  In this case, the affidavit that was before the trial court upon its ruling to deny the motion to strike the deemed admissions contained specific language that, "[b]efore me, the undersigned notary, on this day personally appeared Larry A. Vick, the affiant, a person whose identity is known to me.

5

After I administered an oath, affiant testified [as follows]. . . ." We have previously held that this language is sufficient to make the affidavit competent evidence. *King v. Holland*, 884 S.W.2d 231, 238 n.1 (Tex. App.–Corpus Christi 1994, writ. denied) ("[T]he affidavit is only stated to be 'on his oath' and sworn before a notary public. The fact that the affidavit is taken 'on his oath' makes the statements therein assignable as perjury, which is the goal . . . . The affidavit is therefore not fatally defective."). We hold that the specific language in Vick's affidavit was sufficient to satisfy the statutory requirements for an affidavit.

On Best's second contention, we see nothing in the affidavit that is necessarily outside the personal knowledge of the affiant. Best specifically points to paragraph six of Vick's affidavit as being hearsay that is outside of his personal knowledge. That paragraph states:

> On or around November 3, 2008, Ms. Siegel had a delivery service take the Defendant's file to the temporary offices I shared with the other attorneys during our transition to our present offices. On December 10, 2008, the temporary receptionist discovered she had placed the Defendant's file in an in-box for the wrong set of offices. The file was then immediately delivered to my new permanent office at 1143 Heights Blvd., Houston, Texas 77008.

Each of the facts contained in this paragraph are easily deducible from the surrounding circumstances, and therefore none of these statements *necessarily* fall outside of Vick's personal knowledge. Moreover, even if this one particular paragraph could not be considered, it would not make the affidavit as a whole incompetent evidence, and the other uncontroverted statements in the affidavit are more than enough for Wells to meet her burden in showing good cause to withdraw the deemed admissions.

Vick's general statement that he had "personal knowledge of each of the matters stated," served as a sufficient representation of his personal knowledge for purposes of

6

making the affidavit competent evidence for the trial court to consider. *Cf. Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994) (holding that an affidavit lacking attestation that the statements were based on personal knowledge was legally insufficient). Therefore, we hold that Vick's original affidavit was competent evidence and that it could properly have been considered by the trial court in its entirety.

## D.     Wells's Motion to Strike Deemed Admissions

If Wells's motion to strike the deemed admissions showed good cause and a lack of undue prejudice to Best, the trial court acted unreasonably in denying the motion and thereby abused its discretion by not allowing the admissions to be withdrawn. *See* TEX. R. CIV. P. 198.3(b); *Wheeler*, 157 S.W.3d at 443.

### 1.     Good Cause

"Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler*, 157 S.W.3d at 442 (citing *Carpenter*, 98 S.W.3d at 687-88). Having held that Vick's affidavit was competent evidence, we look to that document to determine if good cause was established to excuse Wells's late response to the requests for admission. First, there was a substitution of counsel that occurred only two weeks before the response was due. Second, a fire destroyed Wells's attorney's office on the day after Vick agreed to take on Wells's representation. Third, the fire required Wells's attorney to employ a temporary receptionist who was unfamiliar with his business. Fourth, the receptionist delivered Wells's file, including the requests for admission, to the wrong law office. Fifth, Wells's counsel was unaware that the requests for admission had been served on Wells until December 10, 2008. The record thus reflects that the failure to timely respond was due to uncontrollable circumstances and mistakes by Wells's counsel and his staff. Certainly,

7

there is nothing in the record that indicates that the tardiness of the response was intentional or the result of conscious indifference, bad faith, or a callous disregard for the rules, nor does Best argue the absence of good cause to withdraw the admissions. For the foregoing reasons, the trial court abused its discretion if it based its ruling on a finding that Wells did not have good cause to withdraw the deemed admissions.

### 2. Undue Prejudice

"Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler*, 157 S.W.3d at 443 (citing *Carpenter*, 98 S.W.3d at 687).

> The rule governing admissions includes as part of the undue-prejudice inquiry that the "presentation of the merits [must] be subserved" by permitting withdrawal. TEX. R. CIV. P. 198.3(b). The two are different sides of the same coin, as presentation of the merits will suffer (1) if the [opposing] party cannot prepare for trial, and also (2) if the requestor can prepare but the case is decided on deemed (but perhaps untrue) facts anyway.

*Wheeler*, 157 S.W.3d at 443 n.2. Under this test, we are permitted to make favorable inferences from the documents filed with the requestor's motion to strike the deemed admissions. *Cf. Wheeler*, 157 S.W.3d at 443 (inferring from the attached evidence that the party opposing the withdrawal of the deemed admissions "received [the] responses two days late but six months before the summary judgment motion was heard").

In this case, Best argues that it would be unduly prejudiced because it relied on the deemed admissions, "and thus discovery was limited, including but not limited to, [Best] not taking at least forty depositions . . . as well as not sending approximately forty-four depositions by written questions . . . which would be needed to properly prepare for trial." Best argues that by the date that the answers to the requests were filed with the motion to strike, less than thirty days remained in the discovery period, which would not have allowed

8

Best to adequately prepare for trial.  We find Best's argument unconvincing.

First, the first trial setting in this case was set for sixty days after Wells's responses to the requests for admissions were finally filed.  This was ample time for Best to continue discovery and request additional time from the trial court.  *See Employers Ins. of Wausau v. Halton,* 792 S.W.2d 462, 467 (Tex. App.–Dallas 1990, writ denied) ("[P]laintiff had almost a month before trial to conduct additional discovery to prove the matters previously admitted.").

Second, Best conducted none of the allegedly necessary depositions between the time the lawsuit was filed on February 27, 2008, and the time the requests were deemed admitted on November 18, 2008.  Despite being aware of Wells's general denial of all of the material allegations based on her March 27, 2008 original answer, Best did not conduct any of the depositions that it claims are necessary to its preparation for trial.[1]  The fact that Best was on notice of Wells's general denial but did not conduct the discovery it claims was necessary shows that Best was not unduly prejudiced.  *See id.* (finding no undue prejudice based in part on the fact that the "plaintiff had known since early July, when defendant filed its original answer, that defendant contested almost all material issues in the case").

Third, under Texas Rule of Civil Procedure 198, deemed admissions are to be stricken if they prevent a substantive trial on the merits, so long as the good cause element is satisfied.  Tex. R. Civ. P. 198.3(b).  Moreover, absent flagrant bad faith or callous disregard for the rules, due process bars merits-preclusive sanctions.  *Wheeler*, 157 S.W.3d at 443.  In this case, the presentation of the merits of the action will be subserved

---

[1]We recognize that during a portion of this time, Wells was in chapter 13 bankruptcy and discovery was not permitted.  The record is unclear as to how long this action was stayed.  However, the stay was lifted on September 5, 2008, giving Best at least ten weeks to conduct discovery before the requests were deemed admitted.

by permitting Wells to withdraw her admissions because, otherwise, summary judgment will preclude a trial on the merits entirely. "When requests for admissions are used as intended—addressing uncontroverted matters or evidentiary ones like the authenticity or admissibility of documents—deeming admissions by default is unlikely to compromise presentation of the merits." *Id*. (citing *Stelly*, 927 S.W.2d at 622). Best was clearly on notice that the requests for admissions that it sought were not these types of uncontroverted or evidentiary matters, and therefore, Best could not have reasonably relied on the admissions in lieu of other discovery.

We hold that Best would not be unduly prejudiced by a withdrawal of the deemed admissions. Further, we hold that the trial court abused its discretion in not granting Wells's Motion to Strike Deemed Admissions, sustain Wells's first issue, and reverse the trial court's order accordingly.

### E.    Best's Motion for Summary Judgment

In a traditional summary judgment proceeding, a successful movant must show that there is no genuine issue of material fact and that judgment should be granted as a matter of law. TEX. R. CIV. P. 166(a); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Because we have held that Wells's deemed admissions should have been withdrawn by the trial court, Best's motion for summary judgment could only have been properly granted based on the affidavit from Best's president, Russell Burnett, because it was the only other evidence offered in support of the summary judgment. Because Wells's general denial controverted all of the material statements made in Burnett's affidavit, Burnett's affidavit is not sufficient to show that there is no genuine issue of material fact. Therefore, we reverse the trial court's order granting summary judgment in

10

favor of Best.

### III. Conclusion

Because Wells showed good cause and no undue prejudice in its Motion to Strike Deemed Admissions, the trial court abused its discretion by not granting the motion. Further, we hold that summary judgment was improper because Wells's general denial raised a genuine issue of material fact. Because we sustain Wells's first issue, we need not reach Wells's second issue that the deemed admissions called for legal conclusions. For the foregoing reasons, we reverse the trial court's orders denying Wells's Motion to Strike Deemed Admissions, and granting Best's Motion for Summary Judgment. We remand this cause to the trial court for further proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
28th day of October, 2010.

11